JOHN HUGHES, Tutor, et al. *v.* ROBERT L. HUGHES, Tutor.

The testatrix, *E. H.*, made a will and died in Louisiana, the place of her domicil. By her will she gave to one of her children the whole of certain immovable property situated in Jackson county, Mississippi, and one-third of the remainder of her estate. The balance of her estate she directed to be divided among her other four children. *Held:* That the right of the testatrix to make such a disposition of immovable property situated in another State, is to be determined by the *lex rei sitæ.*

That the laws of Louisiana, the domicil of the testatrix, making her children forced heirs for a certain proportion of her estate, being in conflict with the *lex rei sitæ,* the latter must govern.

*Held,* further, that an *express declaration* in the will, of the intention of the testator to give the one-third of the estate to one of the children as an extra part over and above the legitimate portion, was not indispensable, the intention being apparent on the face of the will.

APPEAL from the Second District Court of New Orleans, *Morgan,* J. *Durant & Horner,* for plaintiffs and appellants.  *George L. Bright,* for defendant.

LAND, J.  The validity of the olographic will of *Elizabeth Hughes,* is the subject-matter of contest in this suit.

The will is in these words :

" This is my last will.  I, *Elizabeth Hughes,* at my death, do hereby give to my son, *Robert L. Hughes,* the whole of my Ocean Springs' property, lying in Jackson county, Mississippi, fully described in the act of partition between myself and *John Hughes,* made before *J. Graham,* Notary ; and I give my son *Robert* every thing attached and belonging to said Ocean Springs' property."

" I give my said son *Robert,* one-third of the remainder of my estate.  The balance of my estate shall be divided between my five children, including *Robert.* I make *Robert L. Hughes* my testamentary executor.  I revoke all former wills made by me.

" Parish of Orleans, July 9th, 1855.

" Written, dated and signed by me.                    ELIZABETH HUGHES."

The testatrix was domiciled, made her will, and died in Louisiana, leaving at her demise five forced heirs.

It is contended that the disposition of the Mississippi property to the defendant, in addition to the one-third of the succession in Louisiana, is in contravention of Article 1480 of the Civil Code, and is, therefore, null.

The Article of the Code is in these words : " Donations *inter vivos* or *mortis causa* cannot exceed two-thirds of the property of the disposer, if he leaves at his disease a legitimate child, one-half if he leaves two children, and one-third, if he leaves three or a greater number."

Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

The decision of this point is dependent on the question whether the validity of the disposition of the Ocean Springs' property, is to be determined by the law of the domicil—the law of Louisiana, or the law of the *situs*—the law of Mississippi. If by the former, it is clear that the disposition is forbidden by Article 1480 of the Civil Code. If by the latter law, it is equally clear that the bequest is permitted and valid. For between the civil law of Louisiana, and the common law of Mississippi, there is a conflict as to the right or capacity of a testator to deprive his children of the whole of his property at the time of his death, by last will and testament. Under the law of Louisiana, the right is restrained and limited, but under the law of Mississippi the capacity is without limitation or restraint.

Laws which permit and regulate the alienation or acquisition of real estate or immovable property, are real statutes, and have no extra territorial operation or effect. Story on Conflict of Laws, § 13.

The capacity or right to dispose of or acquire immovables, is determinable by the law of the *situs*. If a person has capacity to transfer by the law of the *situs*, he may make a valid title, notwithstanding an incapacity may attach to him by the law of his domicil. Story on Conflict of Laws, § 430, 431, 474.

The forms and solemnities of contracts and testaments necessary for passing title to real estate or immovables, are also prescribed and governed by the local law. Ib. § 435, 474.

The extent of the interest to be taken or conveyed under a contract or testament, is also a question to be determined by the *lex rei sitæ*. On this subject, Judge Story says, and, there seems a perfect coincidence between the doctrine of the common law and that maintained by foreign jurists : " It is universally agreed, that the law *rei sitæ* is to prevail in relation to all dispositions of immovable property, and the nature and extent of the interest to be alienated. If the local law, therefore, prescribes, that no person shall dispose, by deed or by will, of more than half, or a third, or a quarter of his immovable property ; or, that he shall dispose only of a life estate in such property, such laws are of universal obligation, and no other or further alienation, therefore, can be made. It follows that, if the local law prohibits the alienation of certain kinds of immovable property, or takes from the owner the power of charging them with liens, or with mortgages, that law will exclusively govern in every such case. D'Aguesseau fully assents to this doctrine, and says, that no one can be ignorant that when the question is, what portion of immovable property may be devised, it is necessary invariably to follow the law of the place, where the property is locally situate." See Story on Conflict of Laws, § 445, 474.

*Mr. Burge*, speaking on this point, is more specific, and says : " The power of making the alienation by testament is no less *qualitas rebus impressa*, than that of making the alienation by contract. When, therefore, the question arises, whether the immovable property may be disposed of by testament, recourse must be had to the *lex loci rei sitæ*. That law must also decide, whether the full and unlimited power of disposition is enjoyed, or whether it is given under restriction. The validity of the testamentary disposition depends in the latter case on its conformity to that restriction ; whether the restriction consists in limiting the extent or description of property, over which the power of disposition may be exercised, or the persons in whose favor the disposition is made, or in requiring that the

testator should have survived a certain number of days after the execution of the act by which the disposition was made. *The total* or *partial defect of the will, on the ground* that it did not institute heirs, or that it omitted to name the heirs, the *disinherison of the heirs,* the grounds on which the disinherison may be justified, *are essentially connected with the power of disposing of immovable property by testament,* and *are, therefore dependent on the law* of its *situs.* 4 Burge Comm. on Col. and For. Law, pt. 2, chap. 12, pp. 217, 218.

If, therefore, the question be, whether the testatrix had capacity to dispose by testament of her Mississippi immovable property, or whether her testament is clothed with the forms and solemnities required to pass the title, or give the testament validity ; or whether the testatrix could dispose of the whole or a part of her immovable property in Mississippi by testament; or whether the testatrix could disinherit one or more of her children or heirs, as to said immovable property, is exclusively a question to be determined by the law of Mississippi, the law of the *situs.*

The bequest of this real estate to the defendant to the exclusion or disinherison of his brothers and sisters, cannot be considered contrary to Article 1480 of the Civil Code, or in violation of any other law of Louisiana, for the reason, that the power of disposition by testament exercised in favor of the defendant was not conferred on the testatrix by the law of Louisiana, but by the law of Mississippi, in conformity to the permission and policy of which the disposition was made.

The dispositions of the will being permitted by the law of the *domicil,* so far as the property of the testatrix was situate in Louisiana, and subject to its operation, and being permitted by the law of the *situs,* so far as the immovable property of the testatrix was situate in the State of Mississippi, and subject to the operation of law thereof, the will must, therefore, be adjudged to be valid, notwithstanding the conflict between those laws as to the power of disposition by testament.

If it be true as contended by counsel for plaintiffs, that a deceased person can leave but *one succession,* it does not, therefore, follow, that there can be but *one law* from which the power of disposition by testament can be derived, and *that law must be the lex domicilii ;* for the power of disposition as to a part of a succession may be given by the law of the domicil, and the power of disposition as to another part given or withheld by the law of the *situs.* And, when the laws are in conflict as to immovable property, each has its operation and effect within its territorial limits. Story on Conflicts of Laws, § 475.

It is further objected to the will, that it does not contain an *express* declaration, that the one-third part of the succession in Louisiana, given to the defendant, was thus given as *an advantage* or *extra part,* over and above the legitimate portion.

This express declaration is not sacramental, or indispensable to the validity of a donation *mortis causa.* The intention of the testatrix to give to the defendant the one-third part of her succession, as an advantage or extra part, is apparent on the face of her will. 3 Marcadé, pp. 219, 220, 221 ; 2 An. 201.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed, with costs in both courts.

Re-hearing refused.