Revised August 3, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30361

_____


Harry Edward Breaux, Et. Al.

Plaintiffs-Appellants,

versus

John M. Dilsaver,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____


June 13, 2001

Before KENNEDY,[1] JONES, and DeMOSS, Circuit Judges.

Edith H. Jones, Circuit Judge:

This diversity suit arises from Appellants' claim that the Appellee committed fraud and breached his fiduciary duties while serving as administrator of two decedents' estates. The district court dismissed the suit, concluding that the probate exception to federal jurisdiction prevented it from hearing the case. We disagree: that the suit is against the administrator

_____

[1] Circuit Judge of the Sixth Circuit, sitting by designation.

only in his personal capacity and does not require federal interference in any state probate proceeding. As the suit does not fall within the probate exception, we reverse and remand.

Ola H. Elverum and Evelyn Breaux Elverum were husband and wife and lived for many years in St. Mary Parish, Louisiana. They had no children. Evelyn Elverum, however, had six siblings, two of the "full blood" and four of the "half blood," because her father had married twice. This full-blood/half-blood distinction is critical, because under Louisiana's intestate succession laws, full-blood siblings inherit twice as much as their half-blood kin. See La. Civ. Code art. 893.

Ola Elverum died on July 28, 1995. His will left one-sixth of his estate to each of his wife's six siblings, regardless of their half-blood/full-blood status. Appellee John Dilsaver, husband of one of Evelyn's half-blood siblings, was appointed executor of Mr. Elverum's estate. Dilsaver was already serving as curator for Mrs. Elverum under a court ordered interdiction.[2]

Mrs. Elverum died intestate a year later. Her only heirs were her siblings and their descendants. As noted earlier, her full-blood siblings stood to inherit twice as much as their half-

___

[2] The state court in St. Mary's Parish interdicted both Mr. and Mrs. Elverum on June 6, 1995. Dilsaver was appointed joint curator. His son, Douglas Dilsaver, served as undercurator. Prior to the interdiction, Dilsaver's wife, Catherine Breaux Dilsaver, had handled the Elverum's affairs under power of attorney.

blood kin. Dilsaver was appointed administrator of Mrs. Elverum's estate.

Mr. Elverum's estate closed on August 8, 1996, as the heirs were placed in possession and a Judgment of Possession was entered by a Louisiana court. However, the closing of Mrs. Elverum's estate has proven more complicated.

The Appellants in this action are the children of Mrs. Elverum's two deceased, full-blood siblings. As such, they are entitled to a greater proportion of Mrs. Elverum's assets than they are of Mr. Elverum's assets. Appellants allege that John Dilsaver abused his positions as curator, administrator and executor to misallocate certain community property in order to enhance his wife's share of the inheritance. They also allege "a pattern of fraud designed to conceal and obfuscate the systematic plundering of the Elverum estates by Dilsaver."

Despite the controversy surrounding Dilsaver's actions, Mrs. Elverum's estate has been largely closed: there is no will contest, there is no dispute as to the identity of the heirs, or the percentages to which they are entitled, and the heirs took possession of the property of the estate in January, 1998, with the exception of $250,000 held in escrow by the state court.[3]

---

[3] The state court issued a Judgment of Possession on January 20, 1998. The $250,000 in escrow is for the payment of administrative expenses and the resolution of certain other, unspecified issues.

3

Remaining to be completed are Dilsaver's discharge from his position as administrator, final decision on the costs of administration, and the disposition of the $250,000 in escrow with the Louisiana court.[4]

Appellants filed this suit in federal court against Dilsaver pursuant to Louisiana Civil Code article 3191,[5] seeking damages against him personally for his alleged fraud and breach of fiduciary duty in his administration of the two Elverum estates. The federal district court, acting upon the report and recommendation of a federal magistrate judge, dismissed claims for want of subject matter jurisdiction, concluding that this case falls within the probate exception to federal diversity jurisdiction. This appeal followed.

Federal jurisdiction ordinarily exists over lawsuits that could have been brought in a state court, so long as complete diversity of citizenship and the requisite amount in controversy

---

[4] Regardless of the ultimate outcome of this federal action, the distribution of this $250,000 remains in the hands of the Louisiana state courts. The federal courts lack jurisdiction to determine whether and to what degree Dilsaver is entitled to fees and expenses for administering Ola Elverum's estate. This is a purely probate matter for the state courts to decide. Any judgment against Dilsaver in the federal action should be satisfied from Dilsaver's assets and not those of Ola Elverum's estate.

[5] This provision provides in relevant part that:
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.
Louis. Civ. Code art. 3191.

4

are present.  See Turton v. Turton, 644 F.2d 344, 347 (5th Cir. 1981).  For compelling historical reasons, however, a federal court "has no jurisdiction to probate a will or administer an estate." Markham, 326 U.S. at 494 (discussing antecedent history of probate exception).  Nevertheless, the Supreme Court has held that,

> federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatee, and heirs" and other claimants against a descendant's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court."

Markham, 326 U.S. at 494 (quoting Waterman v. Canal Louisiana Bank & Trust Co., 215 U.S. 33, 43 (1909)).  In determining whether a suit in federal court "interferes" with state probate proceedings, this court considers whether the plaintiff's claim "implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties." Blankeney v. Blakeney, 664 F.2d 433, 434 (5th Cir. 1981)(citing Akin v. Louisiana National Bank, 322 F.2d 749 (5th Cir. 1963)). Once a will has been probated, the danger of federal interference is abated and "an action by a legatee, heir, or other claimant against an executor becomes a suit between the parties that is a justiciable controversy within the scope of federal jurisdiction if the other jurisdictional requirements are met."  Akin, 322 F.2d at 751.

5

In the present case, allowing the Appellants' action against Dilsaver to move forward would not result in federal interference in state probate proceedings. Appellants' claims are against Dilsaver personally, not against the estate of either Ola or Evelyn Elverum. Ola Elverum's estate is closed and, regardless of the outcome of Appellants' action, it will not be reopened. Appellants do not seek a reopening, and any judgment favoring them would be satisfied from Dilsaver's own property, not that of Mr. Elverum's closed estate. Similarly, Evelyn Elverum's estate has been finally distributed to the heirs, excepting only the $250,000 in escrow. Even if appellants obtain a judgment against Dilsaver, their judgment could not extend to an order directing distribution of the escrow. Turton v. Turton, 644 F.2d 344, 347-48 (5th Cir. 1981).

In Turton, this court observed that a suit against an executor personally for malfeasance is beyond federal jurisdiction "if it requires a premature accounting of an estate still in probate." 644 F.2d at 348. Dilsaver relies on this statement and on the fact that he has not yet been discharged as administrator of Evelyn's estate. His reliance is misplaced in both instances. The lawsuit against him personally will not impede the probate court's jurisdiction over the escrow and thus will effect no accounting consequence at all upon the estate administration. Further, while the appellants might have brought at least some of their claims

against Dilsaver in the proceeding involving Evelyn's estate, their claims transcend and are not fully remediable in that proceeding. Appellants are not required to piecemeal their claims when the federal court has jurisdiction over them.

The independence of the action in federal court from the two state probate proceedings is readily discernible from the nature of the allegations against Dilsaver. Dilsaver is accused of siphoning off funds from one estate and funneling them into a second estate from which his wife stood to recover a larger share. Moreover, the alleged manipulation may have occurred while Dilsaver was serving as joint curator of the Elverums' interests during their lifetimes or during his tenure as executor of Mr. Elverum's estate, or while he was the administrator of Mrs. Elverum's estate. The alleged fraud does not correlate directly to either probate proceeding and can be properly addressed in this separate action in federal court.

That a relationship exists between the two probate proceedings and appellants' case against Dilsaver is clear, but in this case the relationship does not cause actual interference with the probate proceeding. See Akin, 322 F.2d at 751; Blankeney, 664 F.2d at 434. Appellants' action does not challenge the validity of either Elverum probate proceeding, nor does it seek to recover property from either estate, nor must a federal court assume control of estate property. The existence of an undistributed

7

escrow in Evelyn Elverum's estate does not preclude federal jurisdiction where the federal issues can and will be separately determined without affecting the probate proceeding. <u>Markham</u>, 326 U.S. at 497; <u>Turton v. Turton</u>, 644 F.2d at 347. For all these reasons, the probate exception does not apply to Appellants' La. Civ. Code art. 3191 *in personam* action against Dilsaver. Federal diversity jurisdiction is proper. <u>See</u> <u>Dinger v. Gulino</u>, 661 F.Supp. 438, 443 (S.D.N.Y. 1987)(claims based upon defendant's alleged fraud, negligence, and breach of duty in connection with the disposition of estate property were essentially common law torts and were not within the probate exception); <u>Celentano v. Furer</u>, 602 F.Supp. 777, 779 (S.D.N.Y. 1985)(federal jurisdiction is proper in an action against an executor of a will individually).

Dilsaver argues that even if the probate exception does not apply, there are several alternative bases for affirming the district court's judgment. He directs the court's attention to the abstention doctrine enunciated in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, ____ S.Ct. ____ (1976), the res judicata effect of the state court's judgments of possession, prescription, and Appellants' failure to join certain indispensable parties under Fed. Rule Civ. Pro. 19. None of these issues was ruled upon by the district court. Although this court may decide a case on any ground that was presented to the trial

court, we are not required to do so.  <u>Dandridge v. Williams</u>, 397 U.S. 471, 475 n. 6, ____ S.Ct. ____ (1970).

## Conclusion

The Appellants' claims against Dilsaver personally do not interfere with the state probate proceedings and are therefore not within the probate exception to federal court diversity jurisdiction.  The judgment is reversed and the case remanded for further proceedings in accord with this opinion.

**REVERSED** and **REMANDED**.